USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___6/29/2018___

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Wynn,** | |
| | **Petitioner,** |
| -against- | |
| **Lee,** | |
| | **Respondent.** |

**1:11-cv-03650 (VSB) (SDA)**

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE VERNON S. BRODERICK, UNITED STATES DISTRICT JUDGE:**

Petitioner Vone Wynn[1] ("Wynn"), a New York prisoner currently incarcerated at Green Haven Correctional Facility, seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Following a trial in March 2005, a jury convicted Wynn of murder in the second degree and Wynn was sentenced to twenty-five years to life in prison. (Pet., ECF No. 1, at 1-2.) Wynn brings this action

---

[1] On March 1, 2016, approximately five years after the commencement of this federal habeas action, Wynn came to be represented by counsel, Thomas Francis Liotti. (Notice of Appearance, ECF No. 55.) However, the extent of Mr. Liotti's representation of Wynn has been limited to requesting extensions of time to file papers (*see, e.g.*, ECF Nos. 57, 66) or "adopting" his non-attorney inmate client's filings (*see, e.g.*, ECF. Nos. 59, 90), which apparently means that Mr. Wynn drafts and submits his filings, even though, as a represented party, only Mr. Liotti is permitted to submit filings in this case. (Mr. Liotti in fact has directed Wynn to file submissions in this case. *See* Letter, ECF No. 59 ("I am adopting [Wynn's] pro se submission and directed Mr. Wynn to file an affidavit of service with the Court."). On September 21, 2016, Magistrate Judge Ellis, to whom this case previously was referred, entered an Order directing Mr. Liotti to file a letter with the Court "detailing his capacity to represent his client in this case . . . ." (ECF No. 70.) In March 2018, after this case was reassigned to the undersigned upon Magistrate Judge Ellis's retirement, the undersigned issued an Order directing a status update from both parties (ECF No. 78), to which Mr. Liotti did not respond. As a result, this Court issued an Order to show cause why Mr. Liotti should not be relieved as counsel for Wynn (ECF No. 88), to which both Wynn and Mr. Liotti responded. (ECF Nos. 89 and 90.) Both letters expressed a desire to maintain Mr. Liotti's representation of Wynn, so that Wynn would not be left without counsel in this action. (ECF No. 90 ¶¶ 3, 10; ECF No. 89 at 1.) This Court thus declines to remove Mr. Liotti as counsel of record so that Mr. Liotti may file any objections to this Report and Recommendation.

to challenge his conviction on several grounds: (1) he was denied the right to assistance of conflict-free counsel; (2) his counsel was ineffective; (3) the trial court made a number of impermissible evidentiary rulings; (4) the trial court improperly declined to provide a jury instruction based on a justification defense; and (5) the sentencing court impermissibly considered certain factors during his sentencing.[2] (Pet., ECF No. 1, at 7-8; Am. Pet., ECF No. 62, at 1-2.) William Lee, Superintendent of the Green Haven Correctional Facility ("Respondent"), asserts that the writ of habeas corpus should be denied. (Answer and Mem. of Law in Opp., ECF Nos. 64-65.) For the reasons set forth below, I recommend that the Petition be DENIED in its entirety.

## BACKGROUND

### I.    Factual Background

According to testimony presented at trial,[3] on September 26, 2003, in the early morning hours, Wynn's cousin, Rodney Wilson ("Wilson"), a known drug dealer, got into an argument with another dealer, Jonadial Nelson ("Nelson"),[4] in the Lincoln Public Housing Project ("Lincoln"), located in upper Manhattan. As the fight escalated, Wynn fired six shots, hitting Nelson, and Nelson eventually died from his wounds. (*See generally* Trial Tr. at 105-14, 318-22, 516-17, 519-21.)

---

[2] According to correspondence submitted to the Court following the briefing of this pending Petition, Wynn currently is pursuing, in state court, the exhaustion of additional claims of ineffective assistance of counsel related to the conduct of defense attorney Lori Cohen ("Cohen"). (*See* ECF Nos. 79-82.) Wynn did not raise those claims in any petition in this action; therefore, those claims are not pending before this Court and the Court does not address them here.

[3] The relevant hearing, trial and sentencing transcripts can be found in ECF Nos. 64-4 – 64-13.

[4] Nelson is also referred to in the trial transcripts as "John-John."

The fight began when Nelson and his girlfriend, Taisha Mills ("Mills"), were leaving Lincoln and two males came up to them and told them Wilson wanted to speak with Nelson. (Trial Tr. at 105.) According to Mills, she and Nelson kept walking, and she and Nelson eventually encountered Wilson and Wynn. (*Id.* at 106, 112.) Wynn "walked away" (*Id.* at 409-12) as Nelson approached and began conversing with Wilson, saying he heard Wilson was looking for him.[5] (*Id.* at 317.) Wilson denied he wanted to speak with Nelson, causing the situation to become "tense." (*Id.* at 107-11.) As Wilson and Nelson began to argue with their faces very close together, Robin Hayslett ("Hayslett"), another individual who was with Wilson during the incident (*Id.* at 262-65, 286-88, 317-22; *see also* n. 5, *supra*), noticed that Nelson kept his hand in his pocket, which she thought meant he had a gun. (*Id.* at 317-21, 462-63, 471-72.)

As the argument between Wilson and Nelson escalated, Hayslett tried to signal to Wilson that Nelson had a gun, but then she and Mills suddenly heard gun shots. (*Id.* at 113-15, 318-22, 349, 409-12.) Hayslett saw Wynn holding a gun and shooting Nelson.[6] (*Id.* at 318-22, 349, 469.) The shots were close enough that they caused Mills's ears to ring and throat to burn, and Mills and Hayslett were close enough to the shots that they both "hit the ground." (*Id.* at 113-15, 353.) Hayslett heard Wynn fire five or six times (*id.* at 323) as Nelson tried to run away.[7] (*Id.* at 411-

---

[5] Mills also said that she saw another person, a "crack lady," in the area at the time. (Trial Tr. at 122-24.) Robin Hayslett, another individual who was present at the incident, sold drugs for Wilson (*id*. at 224-25), and eventually became romantically involved with him; she said the "crack lady" description "probably would have" been used to describe Hayslett herself. (*Id.* at 408.) Hayslett was a long-time addict who routinely sold drugs to sustain her addiction and had been arrested for selling drugs more than ten times. (*Id.* at 229.)

[6] Mills testified that she did not know who was shooting (Trial Tr. at 133), but identified Wynn as one of the men who was present at the shooting. (*Id.* at 144.)

[7] Hayslett testified "I was able to see Vone eye to eye and he was shooting" (Trial Tr. at 414), and that when Wynn was shooting, she "was looking at him." (*Id.* at 463.)

14.) According to the medical examiner, Nelson was hit six times in the arm and back, and later died from his wounds. (*Id.* at 72.)

Shortly after the shooting, Hayslett and Mills stood up, and Hayslett left the area of the shooting. (*Id.* at 354.) Later that evening, Wynn called Hayslett and asked if he had "hit" her and whether she was hurt or not. (*Id.* at 422, 460-62.) She told him she was "good" and that he had not hit her. (*Id.* at 460-62.)

Hayslett initially told the police that she had not seen anything (Trial Tr. at 289-90, 305-06, 456-57), but a few months later, on November 14, 2003, when she was arrested for selling drugs, she began speaking with the police about the incident. (*Id.* at 430-34.) After speaking with her lawyer, on February 9, 2004, she entered into a cooperation agreement with the District Attorney's office in exchange for participating in a treatment program instead of being incarcerated in jail. (*Id.* at 295-98.) As part of the agreement, she testified before the grand jury that she saw Wynn shoot Nelson. (*Id.* at 368, 451-54.)

Shortly thereafter, Wynn was arrested for the murder of Nelson on February 9, 2004. (8/19/04 Hearing Tr., ECF No. 64-4, at 10-13.) Later that same day, an individual named Lamont Reynolds identified Wynn as the shooter in a line-up. (Trial Tr. at 555-56.) In oral statements to police and a videotaped statement to Assistant District Attorney ("ADA") Ryan Brackley (hereinafter "ADA Brackley"), Wynn admitted to having been present at the shooting, but denied committing the murder. (8/19/04 Hearing Tr. at 14.) Two days later, on February 11, 2004, Wynn was charged with murder in the second degree.

**II.      Pre-Trial Proceedings**

Prior to a hearing held on April 8, 2004, Wynn retained attorney Patrick Brackley (hereinafter, "defense counsel Brackley" or "defense attorney Brackley"), the brother of ADA Brackley, to represent him. (4/8/04 Hearing Tr., ECF No. 64-4, at 2.) Wynn also was represented by Lori Cohen ("Cohen"), who had been assigned under the Assigned Counsel Plan so-called "18-B Panel" to represent him.[8] (5/27/04 Hearing Tr., ECF No. 64-4, at 1-2.) ADA William Schaeffer appeared on behalf of the prosecution.

At the hearing, Justice Solomon addressed the "novel issue" presented by the fact that Wynn had retained the brother of one of the prosecutors assigned to the case as his counsel. (4/8/04 Hearing Tr. at 1-5.) ADA Schaeffer informed the court that the case would be reassigned, but noted that ADA Brackley might be called as a witness at trial; Defense attorney Brackley confirmed that his brother would be leaving the District Attorney's Office. (*Id.* at 2-3.) Defense attorney Brackley recommended that Cohen also remain as a second defense counsel, in order to avoid any situation where he would have to examine any evidence related to ADA Brackley, and so that Cohen independently could advise Wynn about any potential conflict-of-interest issues. (*Id.* at 3.) Justice Solomon adjourned the case until April 29, 2004 to address Wynn's pretrial motions and other issues, including the possible assignment of a new ADA. (*Id.* at 4.)

On April 29, 2004, both Cohen and defense counsel Brackley appeared on behalf of Wynn and ADA Christopher Conroy appeared for the People. (4/29/04 Hearing Tr., ECF No. 64-4, at 1-2.)  ADA Conroy informed the court that he would be taking over the case and Justice Solomon

---

[8] At the time, Cohen was a seventeen-year veteran of the defense bar. (5/27/04 Hearing Tr., ECF No. 64-4, at 9.)

advised both sides to look into the conflict issue involving ADA Brackley and defense counsel Brackley. (*Id.* at 3-4.) Defense counsel Brackley stated that Cohen would meet with Wynn independently in order to discuss the issue of a possible conflict. (*Id.* at 3.) At a hearing a few weeks later, on May 13, 2004, Cohen informed the court that she had spoken to Wynn independently "regarding any possible conflict" and that Wynn was prepared to be heard by the judge on the issue. (5/13/04 Hearing Tr., ECF No. 64-4, at 2.) Justice Solomon adjourned the case for a hearing to be conducted pursuant to *People v. Gomberg*[9] (hereinafter, "*Gomberg* hearing") with respect to the potential conflict. (*Id.* at 4.)

### A. Pre-*Gomberg* Hearing Inquiries

At the next hearing on May 21, 2004, prior to conducting a full *Gomberg* hearing, Justice Solomon conducted a so-called *Gomberg* inquiry. (5/21/04 Hearing Tr., ECF No. 64-4, at 2-12.) Justice Solomon asked Wynn to confirm that he knew and understood that defense counsel Brackley was the brother of ADA Brackley, who had conducted a videotaped interview of Wynn in the early stages of the case. (*Id.* at 2-3.) Justice Solomon further informed Wynn that it was possible that defense counsel Brackley would be sitting with Wynn at counsel table while ADA Brackley was on the witness stand. (*Id.* at 3.) Justice Solomon warned Wynn of the possible dangers that arise when a defense attorney is related to a witness, due to the familial relationship between them. (*Id.* at 3-4.) Wynn said he understood these possibilities. (*Id.* at 4.) Justice Solomon also told Wynn that it was Wynn's decision alone whether to continue to retain defense counsel Brackley as his counsel, and advised Wynn that if he chose to terminate defense counsel

---

[9] 38 N.Y. 2d 307 (1975). Pursuant to *Gomberg*, trial judges in New York are required to ascertain whether a defendant is aware of a potential conflict of interest and nevertheless chooses to remain with the conflicted attorney. *Id.*

Brackley, he would be given other counsel, even if he could not afford to retain another attorney. (*Id.* at 5.)

For his part, defense counsel Brackley informed the court that he recognized the potential conflict and that he was the one who initially requested that Wynn have another attorney, Cohen, representing him. (*Id.* at 7.) He emphasized that his priority was for Wynn to have the "best" representation possible, whether that involved Brackley himself or not. (*Id.* at 8.) He further said that he did not anticipate that "under any circumstances" he would cross-examine any family member in the case, and that Cohen, as co-counsel, would deal with any issues arising from any testimony from ADA Brackley (including cross-examination and introduction of the videotaped statement). (*Id.* at 9-10.)

On May 27, 2004, Justice Solomon continued the *Gomberg* inquiry, reiterating the potential conflict of interest that arose from the fraternal relationship between defense counsel Brackley and ADA Brackley. (5/27/04 Hearing Tr., ECF No. 64-4, at 3-4.) Defense attorney Brackley emphasized the importance of keeping all discussion of the potential conflict on the record, and not off the record via court sidebars, submissions under seal, *in camera* review or otherwise. (*Id.* at 4-5.) Cohen informed the court that she had discussed the conflict thoroughly with Wynn in her one-on-one meeting with him (without defense counsel Brackley), including the potential for impact of any conflict on the defense's trial strategy, among other issues. (*Id.* at 9.) Cohen represented to the court that she believed Wynn was fully aware of the possible conflicts and possible risks they posed to his defense (*id.*), and Wynn also stated, twice, that he understood the potential conflict. (*Id.* at 10-11.) Justice Solomon told Wynn to speak with his family, Cohen

and defense counsel Brackley before the next court date, during which he would conduct a full *Gomberg* hearing. (*Id.* at 11-12.)

### B.  *Gomberg* Hearing

On June 10, 2004, Justice Solomon conducted the *Gomberg* hearing. (6/10/04 Hearing Tr., ECF No. 64-4, at 3-6.) Justice Solomon began the hearing by reiterating, again, the potential conflict issues that arose from the possibility that ADA Brackley, to whom defense counsel Brackley was related, would be called as a trial witness. (*Id.* at 3-4.) Wynn affirmed his understanding of the concern. (*Id.* at 4.) Justice Solomon again informed Wynn that he could maintain defense counsel Brackley's representation of him, so long as he was aware of the risks and waived them. (*Id.*) Then, after Wynn affirmatively told the court that he had thought about the issue over the preceding several weeks, had spoken to Cohen and defense counsel Brackley, and did not have any questions for Justice Solomon, he informed the court of his decision, stating "I want to stay with Mr. Brackley." (*Id.* at 5.) For confirmation, the court asked him, "you said you want to stay with Mr. Brackley?" to which Wynn responded "yes." (*Id.*) Justice Solomon then spoke with defense counsel Brackley, who confirmed that he would not be involved with any cross-examination of ADA Brackley. (*Id.* at 5-6.)

### III.   Jury Trial and Sentencing

Wynn's jury trial, with Justice Wittner presiding, began on February 17, 2005 and concluded on March 4, 2005. At a pretrial hearing, Cohen and defense attorney Brackley had asked to be referred to as "co-attorneys" in front of the jury at trial, instead of designating Wynn's defense attorneys as "primary" and "secondary" (or similar). (2/15/05 Hearing Tr., ECF No. 64-4, at 7.)

At trial, ADA Brackley testified as a prosecution witness. (Trial Tr. at 797-822.) Prior to his testimony, Justice Wittner informed the jury of the "unusual" fact ADA Brackley was the brother of defense counsel Brackley, but that ADA Brackley no longer was working as an ADA. (Trial Tr. at 617-18.) She further told the jury that ADA Brackley's involvement in the case was limited to taking Wynn's initial statement. (*Id.*)

ADA Brackley testified that he came to investigate the murder because his office was generally investigating heroin sales at Lincoln. (*Id.* at 800-03.) He testified that he found out about the murder when Lamont Reynolds, a confidential informant, had provided information about the shooting to the police. (*Id.* at 804.)

ADA Brackley also testified about his connection with Hayslett. (*Id.* at 804-06.) He testified that he first met her in October 2003, and that he met with her several times. (*Id.* at 804-05.) He testified that she agreed to cooperate with him (*id.* at 806), and that he arranged for her to participate in a drug treatment program. (*Id.* at 821-22.) ADA Brackley also testified about his interactions with Wynn. After Wynn was arrested, ADA Brackley conducted a videotaped interview of Wynn about the incident. (*Id.* at 809-14.) He said that, at specific points during the interview, Wynn asked about self-defense and justification for homicide. (*Id.* at 811.) After the interview, he drafted the document which charged Wynn with murder. (*Id.* at 815.) Consistent with representations that defense counsel Brackley had made during the *Gomberg* inquiries that he would not handle any cross-examination of any family member, Cohen conducted the cross-examination of ADA Brackley. (*See id.* at 816-22.)

Hayslett testified as part of her cooperation agreement on behalf of the prosecution against Wynn. (Trial Tr. at 228-29, 454.) She testified that she had seen Nelson and Wilson arguing, and that she saw Wynn shoot Nelson. (*See* Background Section I, *supra*.)

An individual named Lamont Reynolds also testified as a prosecution witness at trial. (Trial Tr. at 486-607.) Reynolds was a registered confidential informant. (*Id*. at 498.) He testified that the police officer to whom he was registered and reported was Detective Mike Paul. (*Id.*) He would give Paul information from "be[ing] on the streets," and Paul would pay Reynolds and would help Reynolds when Reynolds was in jail. (*Id*. at 498-502.) Reynolds testified that Paul only paid him if he provide Paul with "correct information." (*Id.* at 502-04.) However, Reynolds said he was not being paid for his testimony in Wynn's trial. (*Id.* at 504.)

Reynolds testified that he saw the argument between Wilson and Nelson, and that as he walked by the argument, he heard about five gunshots. (Trial Tr. at 512-15, 521-24.) After hearing the shots, he turned around and saw Wynn shooting Nelson. (*Id.* at 515-16, 523.) Reynolds testified that he told Detective Paul that he had seen Wynn shoot Nelson, and that Paul told him Reynolds that he would tell another officer who "worked that area." (*Id.* at 529, 531-33, 567-68, 581-86.) Reynolds spoke with detectives Watts and Clarke about the murder a few days after the murder. (*Id.* at 536.) On February 2004, he was asked to come to the police precinct to view a lineup, wherein he identified Wynn as "the guy who killed [Nelson]." (*Id.* 555-56; *see also* 8/19/04 Hearing Tr. at 11.)

After both sides rested, Cohen asked Justice Wittner to charge the jury with "self defense, justification." (Trial Tr. at 854-56.) Justice Wittner gave no such charge.

At the conclusion of the trial, the jury convicted Wynn of murder in the second degree. On March 24, 2005, Justice Wittner sentenced Wynn to an indeterminate prison term of 25 years to life. (Sentencing Tr., ECF No. 64-13, at 12.)

## IV.    Direct Appeal

Wynn appealed his conviction and sentence to the Appellate Division, First Department (hereinafter, "Appellate Division"). (Appeal Brief, Answer Ex. A, ECF Nos. 64-1 and 64-2.) On direct appeal, Wynn raised ten claims: seven claims based upon the trial court's evidentiary rulings and other conduct, one claim based upon a failure to provide a jury instruction for a justification defense, one claim based on the actions of the sentencing court and one claim based on a deprivation of the right to the assistance of conflict-free counsel based on the fact that defense counsel Brackley and ADA Brackley were brothers. (*Id.*) The Appellate Division unanimously affirmed Wynn's conviction and sentence on November 5, 2009. (Order, Answer Ex. C, ECF No. 64-3.) In affirming his conviction, the Appellate Division denied Wynn's claims based upon the actions of the trial court as unpreserved and/or on the merits. (*Id.* at 55-56.) It also found that Wynn's sentence was not based on any improper criteria, and that it had "no basis for reducing the sentence or remanding for resentencing." (*Id.* at 56.) The Appellate Division primarily focused on Wynn's claim that he was deprived the assistance of conflict-free counsel, finding that he "was not deprived of his right to conflict-free counsel." (*Id.* at 54.) The Court stated:

> Defendant chose to retain an attorney who was the brother of a former prosecutor who had handled the initial stages of this case and who had taken a videotaped statement from defendant. Defendant made a valid waiver of any potential conflict arising from this situation when, at several court appearances and during a thorough inquiry pursuant to *People v Gomberg* (38 NY2d 307 [1975]), the court warned him of the possible disadvantages of this arrangement. Moreover, defendant also consulted with a second, conflict-free attorney regarding the decision to remain with the potentially conflicted attorney, and it

11

was the second attorney who cross-examined the lead attorney's brother at both the suppression hearing and trial. There is not merit to defendant's suggestion on appeal that, despite all these precautions, there was an unwaivable conflict (*see United States v Perez*, 325 F3d 115, 125-129 [2d Cir 2003]).

(*Id.* at 54-55.)

Wynn then petitioned the New York State Court of Appeals ("Court of Appeals"), seeking review only for his claim that he was deprived of the right to conflict-free counsel. (Pet. to Court of Appeals, Answer Ex. D, ECF No. 64-3.) Wynn's request for leave to appeal did not mention any of the other claims raised on direct appeal. (*Id.*) The Court of Appeals denied leave to appeal on March 18, 2010. (Certificate Den. Leave, Answer Ex. F, ECF No. 64-3.) Wynn sought reconsideration of this decision, but on August 3, 2010 the Court of Appeals again denied leave to appeal. (Certificate Granting Recons. and Upon Recons. Den. Leave to Appeal, Answer Ex. G, ECF No. 64-3.)

## V.    Original Petition And Stay To Pursue Collateral Proceedings In State Court

Wynn commenced this action by filing a Petition for writ of habeas corpus on May 9, 2011. (*See* Pet.) However, in July 2011, Wynn requested to stay the action in order to exhaust additional claims he was pursuing in state court via collateral proceedings under New York State Criminal Procedure Law ("CPL") Section 440.10. (Letter from Pet'r, Answer Ex. H, ECF No. 64-3; *see also* 7/29/11 Order, ECF No. 9.) In particular, Wynn sought to exhaust his claim that defense attorney Brackley induced Hayslett to falsely testify against him.

Respondent opposed the request. (Resp't Letter in Opp., Answer Ex. I, ECF No. 64-3; *see also* 7/29/11 Order.) Magistrate Judge Ellis construed Wynn's application as a motion to stay the proceedings, as well as a motion to amend his petition, and recommended that both motions to be granted. (R. & R., ECF No. 10.) The proceedings were stayed in November 2011, upon the

12

District Court's adoption of Magistrate Judge Ellis's recommendations. (Endorsement, ECF No. 14.)

It was not until almost three years later, in June 2014, that Wynn filed a motion to vacate his conviction under CPL Section 440.10, on the basis of ineffective assistance of counsel. (Section 440 Mot., Answer Ex. K, ECF No. 64-3.) The motion was based on actions that Wynn alleged defense attorney Brackley took against Wynn's interest, which purportedly were caused by the conflict of interest which arose from the fraternal relationship between defense counsel Brackley and ADA Brackley. (*Id.*) Specifically, Wynn alleged in his motion that defense counsel Brackley "coerc[ed]" Hayslett to falsely testify against Wynn to help ADA Brackley by ensuring Wynn's conviction. (Aff. in Supp. of Mot., Answer Ex. K.) Justice Wittner denied Wynn's Section 440 motion on November 6, 2014, on the basis that Wynn offered "[o]nly hearsay evidence" to support his claims and because his motion was "unsupported by other reliable evidence." (Decision, Answer Ex. M, ECF No. 64-3 at 120.) Justice Wittner noted that Wynn failed to submit with his motion "an affidavit from the eyewitness, Robin Hayzlet [sic] or attorney, Patrick Brackley." (*Id.*)

The following month, in December 2014, Wynn moved to renew his 440 motion. (Appl. for Renewal of Section 440 Mot., Answer Ex. N, ECF No. 64-3.)  Justice Wittner denied Wynn's motion "based on People's affirmation in response" on August 14, 2015. (Order, Answer Ex. S, ECF No. 64-3.)

While his motion to renew was pending, Wynn also moved under CPL Section 460.15 for permission to appeal the denial of his Section 440 motion. (Appl. for Certificate for Leave to Appeal, Answer Ex. P, ECF No. 64-3.) This motion was denied by Justice Mazzarelli on April 23,

13

2015. (Certificate Den. Leave, Answer Ex. R, ECF No. 64-3.) On October 2, 2015, Wynn applied to the Appellate Division for permission to appeal Justice Wittner's denial of his motion to renew. (Notice of Appl., Answer Ex. T, ECF No. 64-3.) This motion was denied on December 3, 2015. (Certificate Den. Leave, Answer Ex. V, ECF No. 64-3.)

Following the conclusion of Wynn's Section 440 motion practice, the District Court directed Wynn to file any amended Petition. (2/16/2016 Order, ECF No. 53). Shortly thereafter, on March 1, 2016, Wynn's counsel noticed his appearance as counsel of record in this matter. (Notice of Appearance, ECF No. 55.) Wynn filed an amended petition on June 2, 2016. (*See* Am. Pet., ECF No. 62.)

**DISCUSSION**

**I.    Legal Standards**

Under 28 U.S.C. § 2254(a), as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a person in custody pursuant to a state court judgment only may prevail on an application for a writ of habeas corpus on the ground that his or her custody violates "the constitution or laws or treaties of the United States." The petitioner must show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Johnson v. Williams*, 568 U.S. 289, 292 (2013). For the purposes of federal habeas review, "clearly established law" is defined as "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

14

A state court decision is "contrary to," or an "unreasonable application of," clearly established law if it: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412-13. The state court decision must be "more than incorrect or erroneous;" it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The AEDPA "dictates a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal quotation marks and citations omitted).

One of the grounds for Wynn's petition is the deprivation of the right to the assistance of conflict-free counsel.[10] Counsel has "a duty to avoid conflicts of interest." *Strickland v. Washington*, 466 U.S. 668, 688 (1984) (citing *Cuyler*, 446 U.S. at 346). "Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981); *see also United States v. Blau*, 159 F.3d 68, 74 (2d Cir. 1998) ("A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel."). "The right to conflict-free counsel applies equally to appointed, and, as here, retained counsel." *Skinner v. Duncan*, 2003 WL 21386032, at *41 (citing *Cuyler v. Sullivan*, 446 U.S. 335,

---

[10] Respondent argues that the issue of conflicts of interests should be analyzed only under *Strickland* as the clearly established federal law. (Resp't Mem. of Law in Opp. at 68.) The Court declines to take this view, as "[t]he standard governing an ineffective assistance of counsel claim based on an asserted conflict of interest was articulated by the Supreme Court in *Cuyler v. Sullivan* and differs from the more general ineffective assistance standard enunciated in *Strickland*." *Skinner v. Duncan*, No. 01-CV-6656 (DAB) (AJP), 2003 WL 21386032, at *41 (S.D.N.Y. June 17, 2003) (internal citations omitted).

344 (1980)). "The burden of proof rest[s] on [petitioner] to show a conflict of interest by a preponderance of the evidence." *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000). "[T]he burden of proof cannot be met by speculative assertions of bias or prejudice." *Id.* at 41. "[A] defendant has suffered ineffective assistance of counsel in violation of the Sixth Amendment if his attorney has (1) a potential conflict of interest that resulted in prejudice to the defendant, or (2) an actual conflict of interest that adversely affected the attorney's performance." *Blau*, 159 F.3d at 74.

A potential conflict of interest arises when "the interests of the defendant could place the attorney under inconsistent duties in the future." *United States v. Scarpaci*, 731 F. Supp. 2d 341, 344 (S.D.N.Y. 2010). Potential conflicts of interest are waivable. The familial relationship context in and of itself is not a sufficient basis to find an actual, unwaivable conflict of interest. *See United States v. Pizzonia*, 415 F. Supp. 2d 168, 185 (E.D.N.Y. 2006) ("It would be inappropriate to burden an attorney's career with the background of his relatives."). Even so, the Court recognizes that, even in absence of an actual conflict, an attorney's loyalties to third parties, including relatives and family members, may create a potential conflict of interest if the interests of those other individuals are adverse to those of the client. However, the waiver of a potential conflict defeats a claim of ineffective assistance of counsel, unless: (1) the conflict "was so severe as to be unwaivable," or (2) the waiver "was not knowing and intelligent with respect to the specific conflict that led to the lapse in . . . representation." *United States v. Schwarz*, 283 F.3d 76, 95 (2d Cir. 2002). As the Second Circuit has held:

> Where the right to counsel of one's choice conflicts with the right to an attorney of undivided loyalty, the determination of which right is to take precedence must generally be left to the defendant, who may make a knowing and intelligent

16

> waiver of his right to a conflict-free lawyer if he desires to continue the representation.

*United States v. Cain*, 671 F.3d 271, 293 (2d Cir. 2012). "Where an actual or potential conflict has been validly waived, the waiver cannot be defeated simply because the conflict subsequently affects counsel's performance; such a result would eviscerate the very purpose of obtaining the waiver." *Schwarz*, 283 F.2d at 95. Thus, a defendant may "waive his right to conflict-free counsel in order to retain the attorney of his choice." *Id.*

An actual conflict of interest arises when the attorney's and the defendant's interests "diverge with respect to a material factual or legal issue or a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." *Scarpaci*, 731 F. Supp. 2d at 344. Where the petitioner did not raise any objection at trial regarding counsel's alleged conflict of interest, the petitioner "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980); *see also Mickens v. Taylor*, 535 U.S. 162, 193 (2002) ("absent objection, a defendant must demonstrate that a conflict of interest actually affected the adequacy of his representation.") (internal quotation marks and citation omitted). The mere "possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350. If the petitioner successfully demonstrates the existence of an actual conflict, he "need not demonstrate prejudice in order to obtain relief." *Id.* at 349-50. "But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id.* at 350 (citation omitted).[11]

---

[11] This is because "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." *Strickland v. Washington*, 466 U.S. at 692 (1984). The Supreme Court has only

Wynn also claims ineffective assistance of counsel. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his counsel's representation 'fell below an objective standard of reasonableness,' and (2) that he suffered prejudice . . . ." *Momplaisir v. Capra*, 718 Fed Appx. 91, 92 (2d Cir. 2018) (summary order) (citing *Strickland*, 466 U.S. at 688, 694).

To meet the first prong, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. However, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689; *see also Silva v. Keyser*, 271 F. Supp. 3d 527 (S.D.N.Y. 2017) ("the defendant has the burden of proving 'that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.'") (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1985) (citing *Strickland*, 466 U.S. at 688-89)). To satisfy the second prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

---

found prejudice in cases presenting issues of multiple representation, where an attorney represented multiple defendants. *Skinner*, 2003 WL 21386032, at *42.

"Because both the *Strickland* standard and AEDPA provide for deferential subsequent review, it is a 'doubly deferential judicial review that applies to a *Strickland* claim . . . .' " *Harnett v. Conway*, No. 08-CV-1061 (JPO), 2014 WL 6390285, at *6 (S.D.N.Y. Nov. 17, 2014) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Guillen v. Stephens*, No. EP-14-CV-136 (KC), 2015 WL 4094645, at *5 (W.D. Tex. 2015) ("The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.") (citation omitted). It follows that, in order for a petitioner to prevail on an ineffective assistance of counsel claim, he must meet the doubly deferential standard under both *Strickland* and AEDPA, which require different inquiries: the Supreme Court has explained the "pivotal question" of whether the state court's application of *Strickland* was unreasonable is "different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). In order to show that the state court's application of *Strickland* was unreasonable, Wynn "must do more than 'convince a federal habeas court that, in its independent judgment, the state court applied *Strickland* incorrectly. Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.'" *Lopez v. Rivera*, 157 Fed. Appx. 358, 359 (2d Cir. 2005) (summary order) (quoting *Bell v. Cone*, 535 U.S. 685, 699 (2002) (brackets in original). Thus, on habeas review, "[a] federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (citing *Harrington*, 562 U.S. at 103) (brackets in original).

II.   **Application**

A.   **Wynn's Claim That He Was Denied the Right To The Assistance Of Conflict-Free Counsel Should Be Denied**

Wynn claims that an actual, unwaivable conflict of interest arose from the fact that defense counsel Brackley was the brother of ADA Brackley, who had been one of the early prosecuting ADAs assigned to the case. He further alleges that the conflict was demonstrated through the actions of defense counsel Brackley, whom he claims induced Hayslett to testify falsely against him. He claims "that he suffered from a conflict of interest which was based on the sibling relationship that existed between petitioners [sic] trial counsel and the district attorney who conducted the initial stages of investigation and prosecution, and who also became a witness on the peoples [sic] behalf." (Am. Pet. at 3.) Wynn alleges that this relationship created a conflict that was "so severe" such that it was a "per se violation[] of the Sixth Amendment." (*Id.* at 10.) Moreover, he argues that "[t]here was an overwhelming presence of family bond," which prevented both members of defense counsel from providing him with adequate representation. (*Id.* at 14.)

1. **Wynn Waived Any Potential Conflict Of Interest**

Even assuming that a conflict of interest existed, the Court finds that Wynn waived any such conflict. Wynn independently retained defense counsel Brackley.[12] The trial court raised with Wynn the issue of the potential conflict numerous times in pre-trial hearings and pre-hearing *Gomberg* inquiries. (*See supra* Background Section II, "Pre-Trial Proceedings.") Counsel also discussed the issue with Wynn, including independent discussions between Wynn and

---

[12] Wynn himself states in his amended petition that he "convinced family members to retain Patrick Brackley . . . ." (Am. Pet. at 8.)

Cohen, during which defense attorney Brackley was absent. (*See supra* Background Section II, "Pre-Trial Proceedings.") Finally, at the actual *Gomberg* hearing before Justice Solomon, Wynn explicitly stated—*twice*—that he wanted defense counsel Brackley's representation to continue. (6/10/04 Hearing Tr. at 5.) As a result, even if there was any such conflict, Wynn waived it.

### 2. Wynn Fails To Demonstrate An Actual Conflict Of Interest

#### a. No Actual Conflict Arose From The Fact That ADA Brackley And Defense Counsel Brackley Were Brothers

Wynn first raised an issue on direct appeal that an actual, unwaivable conflict of interest arose from the fact that ADA Brackley and defense counsel Brackley were brothers. However, the familial relationship context, in and of itself, is not a sufficient basis to find an actual, unwaivable conflict of interest. *See Pizzonia*, 415 F. Supp. 2d at 185 ("It would be inappropriate to burden an attorney's career with the background of his relatives.").

The Court finds that the Appellate Division's determination – that there was no unwaivable conflict presented by the fact that defense counsel Brackley and ADA Brackley were brothers – was not contrary to clearly established federal law or based on an unreasonable determination of the facts. Therefore Wynn's claim that he was denied the assistance of conflict-free counsel in violation of his Sixth Amendment constitutional rights should be denied.

#### b. Wynn Has Not Demonstrated That An Actual Conflict Arose From His Allegations That Defense Counsel Brackley Induced A Witness To Falsely Testify Against Him

After the Appellate Division (and, by declining to provide leave to appeal, the Court of Appeals) denied Wynn's claim that a conflict of interest arose from the fact that defense counsel Brackley and ADA Brackley were brothers, Wynn brought again – this time on collateral attack – the argument that he had suffered from an unwaivable conflict of interest, alleging this time that

21

defense counsel Brackley's alleged inducement of Hayslett to testify falsely was proof of that conflict. Wynn claims that defense counsel Brackley approached Hayslett and "induced [her] to give false testimony" against Wynn. (Am. Pet. at 1.) The details of Wynn's allegations are that, pursuant to a cooperator agreement Hayslett entered into with the prosecution's office on February 11, 2004, Hayslett agreed to testify against Wynn at the grand jury and at trial (*id.* at 9,), and she in fact did testify that she saw Wynn shoot and kill Nelson. (*Id.* at 8.)

When Hayslett was re-arrested on separate, unrelated charges in February 2005, Wynn alleges that defense counsel Brackley visited Hayslett while she was incarcerated "to ensure that she upheld the original agreement that was made with his brother A.D.A. Brackley, which was to testify at the grand jury and at trial." (*Id.* at 9, ¶¶ 17-18.) In particular, Wynn alleges that defense counsel Brackley "related that if she cooperated with him, and his brother (Prosecutor Ryan Brackley), by stating that she witnessed Wynn commit the crime, then he would make sure she received a lighter sentence in her own pending case." (*Id.* at 9, ¶ 18.) In support of this claim, Wynn attaches a sworn affidavit from Hayslett, which corroborates these claims. (Am. Pet. Ex. D.)

In a Report and Recommendation to the District Court, recommending these proceedings to be stayed and granting Wynn leave to amend his petition, Magistrate Judge Ellis said about the claim: "such an act on the part of a defense attorney seems too egregious to be believable." (R. & R. at 4.)  This Court agrees. Wynn has not provided plausible proof that defense counsel Brackley engaged in the conduct he alleges. Although Wynn submitted an affidavit from Hayslett, Respondent pointed out (and the First Department agreed) that the information in the affidavit is demonstrably false, based on certain facts of the case (*e.g.*, that Hayslett had already entered

22

into a cooperator agreement with the District Attorney's office, prior to defense counsel Brackley entering the case as Wynn's counsel). Even if the Court were to believe that defense counsel Brackley induced Hayslett to falsely testify against his own client, Wynn does not show any resulting prejudice: even by Wynn's own characterization of events, Hayslett already had agreed to testify against Wynn (and in fact, had testified against him at the grand jury) prior to any alleged inducement by defense counsel Brackley. Wynn concedes in his Amended Petition that Hayslett already had entered a cooperation agreement with the DA's office to testify against Wynn, before defense attorney Brackley joined the case. Therefore, even if defense counsel Brackley had visited Hayslett between her grand jury testimony and her trial testimony merely to ensure she upheld her agreement with the DA's office, Wynn was not subject to prejudice, because Hayslett already had agreed to testify against Wynn.

The Court further finds that the state court's review of Wynn's claim did not violate any constitutional right. The state court first rejected Wynn's claim on the basis that he had not provided any evidence or support for his allegation, apart from his own conjecture and hearsay. Upon Wynn's seeking of rehearing, after he obtained an affidavit in support of his claims, Respondent opposed the motion due to factual inconsistencies, pointing out direct facts contained in the affidavit that conflicted with information presented at trial, necessarily rendering the affidavit false. When the state court dismissed the motion for rehearing, it cited to the People's opposition. Thus, the state court's decision was on the merits. *Harrington v. Richter*, 562 U.S. 86 (2011) (state court decisions that are silent about the basis for the decision are treated as merits determinations entitled to AEDPA deference); *see also Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) ("'Adjudicated on the merits' has a well settled meaning: a decision

23

finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground."). Wynn has not shown that the decision was "so lacking in justification that there was . . . [no] possibility for fairminded disagreement." *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (citing *Harrington*, 562 U.S. at 103) (brackets in original).

Therefore, this Court recommends that Wynn's claim that he was denied the assistance of conflict-free counsel be denied.

**B.      Wynn's Claim Based Upon Ineffective Assistance Of Counsel For Failure To Investigate Should be Denied**

Wynn's claim for ineffective assistance of counsel is based on his allegation that his defense counsel failed to investigate whether Detective Mike Paul ("Detective Paul"), the detective for whom trial prosecution witness Lamont Reynolds served as a confidential informant, actually existed. (Am. Pet. at 18.) Wynn alleges Paul did not exist and, therefore, that portions of testimony from two witnesses which referred to Detective Paul were false and manufactured in order to name Wynn as a suspect. (*Id.* at 17.) Wynn reasons "that if defense counsel let perjured testimony from prosecution witness[es] . . . something was not right." (*Id.*) According to Wynn, "[t]rial counsel's failure . . . put petitioner's defense at an extreme disadvantage," creating prejudice. (*Id.* at 18.) In support of his claim, Wynn attaches a report from a private investigator which details the efforts made by the investigator to find and identify Detective Paul; the report identifies at least three individuals who worked as detectives for the New York City Police Department named "Michael Paul."  (Am. Pet. Ex. E.)

The Court finds that the claim is time-barred and, in any event, should be dismissed on the merits.

24

### 1. The Ineffective Assistance Claim Is Untimely

Prior to the expiration of the AEDPA one-year limitations period, Wynn sought (in July 2011) and obtained (in September 2011) a stay of these federal habeas proceedings so that he could pursue an unexhausted claim in state court, *i.e.*, that defense counsel Brackley induced a witness to falsely testify against him. (R. & R., ECF No. 10, at 2.) This was the only claim upon which Wynn based his motion to stay; he did not mention any claims for failure to investigate. Nonetheless, Wynn included in his Amended Petition, filed after the AEDPA one-year limitations period, a claim for ineffective assistance of counsel due to counsel's failure to investigate the existence of Detective Paul. Therefore, the Court must determine whether Wynn's failure to investigate claim was timely raised.

"Any claim raised for the first time in an amended [post-conviction] motion filed outside the limitations period must 'relate back' to the initial motion in order to be timely under Federal Rule of Civil Procedure 15." *Martin v. United States*, 834 F. Supp. 2d 115, 123 (E.D.N.Y. 2011) (citing *Slayton v. Am Express Co.*, 460 F. 3d 215, 228 (2d. Cir. 2006) (proposed amendment relates back only when it arises out of the same factual conduct forming the basis of the original pleading)). "To relate back, the amendment must 'assert[] a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.'" *Id.* (quoting Fed. R. Civ. P. 15(c)(1)(B)) (brackets in original). "In the *habeas* context, '[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.'" *Id.* (citing *Mayle v. Felix*, 545 U.S. 644, 664 (2005)).

"The Supreme Court has concluded that '[a]n amended habeas petition . . . does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and

25

type from those the original pleading set forth.'" *Speed v. United States*, No. 12-CV-7777 (PKC), 2013 WL 416026, at \*2 (S.D.N.Y. Feb. 4, 2013) (quoting *Mayle*, 545 U.S. at 650). "'If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitations period would have slim significance.'" *Id.* Moreover, claims do not "relate back" just because both claims raised are for ineffective assistance of counsel. *Hasarafally v. United States*, Nos. 10-CV-3457 (SAS), S1-05-CR-401 (MBM), 2012 WL 6107685, at \*11 (S.D.N.Y. Dec. 10, 2012) (dismissing amended claim as untimely asserting a new ground for relief that did not relate back even when amended claim and original claim were both for ineffective assistance of counsel).

Here, Wynn did not seek to stay or amend his complaint based on the failure to investigate claim. Therefore, the Court construes his inclusion of the claim in the Amended Petition as a request seeking further leave to amend to include the claim in his amended petition. Because the Amended Petition was not filed until 2016, after the expiration of AEDPA's one-year limitations period, the Court only may grant leave if the claim relates back to his original claims. Because this claim is based on facts that are entirely different from the facts underlying his claims about defense counsel Brackley's alleged conduct, such claim does not relate back. Nor does the claim relate back just because it is also an ineffective assistance of counsel claim. Therefore, because the claim is untimely and does not relate back, it should be dismissed.

## 2. In Any Event, The Claim Should Be Denied On The Merits

Even if the Court were to consider Wynn's claim for ineffective assistance of counsel for failure to investigate the existence of Detective Mike Paul, it should be denied.

26

For claims of ineffective assistance of counsel that are based upon failure to investigate, "[t]he Supreme Court has held that 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Jiang v. Larkin*, No. 12-CV-3869 (PGG)(SN), 2016 WL 1718260, *24 (S.D.N.Y. Apr. 28, 2016) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 690-91)). "'In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Id.*; *see also Guinyard v. Kirkpatrick*, 554 Fed. Appx. 61, 63 (2d Cir. 2014) (summary order) (finding that petitioner did not meet AEDPA's high standard on failure to investigate claim when claim based on failure to timely examine police reports, and counsel elicited substance of reports from detective's testimony). Defense counsel is permitted to make certain strategic trial decisions in order to put forth the best case; counsel need not investigate those claims which do not "go to the heart of [the] defense" or which would not have resulted in prejudice. *Momplaisir v. Capra*, 718 F. App'x 91, 93 (2d Cir. 2018) (summary order); *see also Jiang* at *25 ("[i]t is not necessary for this Court to determine whether [counsel's] failure to interview and call [certain witnesses] at trial constitutes deficient performance, however, because [petitioner] has not demonstrated prejudice").

Although Wynn presented a report from a detective that there were only a few detectives named Mike Paul on the police force at the time of the murder, the claim fails for a number of reasons. Wynn has not shown that the claim goes to the "heart" of his defense. *Momplaisir*, 718 F. App'x at 93. The testimony about Detective Paul, which was merely offered as background explanation of how Reynolds' observations of the murder came to be known by the police, had

27

limited relevance to the pertinent facts at trial. Even if Reynolds and other witnesses never had mentioned Detective Paul, or if defense counsel had somehow managed to contradict their testimony on the ground that Detective Paul did not exist, there is no evidence that the jury would not have convicted Wynn, in light of the other evidence against him (including, *e.g.*, eyewitness testimony from two witnesses, Hayslett and Reynolds, identifying Wynn as the shooter). *Ortega v. Ducan*, 333 F.3d 102, 108 (2d Cir. 2003) (when government witness provides false testimony without prosecution's knowledge, due process only violated "if the testimony was material and the court [is left] with the firm belief that but for the perjured testimony, [petitioner] would most likely not have been convicted") (internal quotation marks omitted); *see also Strickland*, 466 U.S. at 494. Wynn's vague statements that the testimony mentioning Detective Paul was integral in tying Wynn to the case and identifying him as a suspect are not sufficient to overcome this burden. *See Pierre v. Ercole*, 560 F. App'x 81, 83 (2d Cir. 2014) ("bare allegations" insufficient to carry petitioner's burden); *see also Jiang*, 2016 WL 1718260, at *25 ("vague statement[s]" are insufficient). Thus Wynn has not made a showing of prejudice.[13]

For these reasons, this Court concludes that Wynn has not demonstrated that he received ineffective assistance of counsel based on counsel's failure to investigate the existence of Detective Paul.

---

[13] In any event, there was no evidence offered at trial establishing the precinct at which Detective Paul worked. Thus, the fact that Detective Paul worked at a precinct separate from the precinct in which Nelson's murder occurred is not contradicted by any new evidence. Indeed, Reynolds testified that Detective Paul told him (Reynolds) that the murder of Nelson did not take place in Detective Paul's jurisdiction. (Trial Tr. at 528-29, 533-34, 567-68, 582-85.) Therefore, it is not inconsistent with the trial testimony that Detective Paul worked in another jurisdiction.

C.   **Wynn's Remaining Claims Should Be Denied**

Wynn further raises nine other claims: seven claims based on the trial court's evidentiary rulings or conduct; one claim based on a justification defense; and one claim that the sentencing court considered improper factors in levying his sentence. (Pet. at 7-8; Am. Pet. at 1.)

### 1. Wynn Did Not Present These Claims To The Court Of Appeals; Therefore They Are Unexhausted

To bring a habeas petition, a petitioner must first exhaust all of his claims in state court.[14] An application for a writ of habeas corpus brought by a person in state custody shall not be granted unless: "(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). "State remedies are deemed exhausted when a petitioner has 'presented the federal constitutional claim asserted in the petition to the highest state court . . . and informed that court (and lower courts) about both the factual and legal bases for the federal claim.'" *King v. Demarco*, No. 11-CV-2000, 2011 WL 3471548, at *2 (E.D.N.Y. Aug. 3, 2011) (quoting *Ramirez v. Attorney Gen. of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001)). To complete the exhaustion process, Wynn would have had to sufficiently present his claims to the Court of Appeals in his application for leave to appeal. N.Y. Crim. Proc. L. § 460.20; *see also Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005).

To fully exhaust a claim, a petitioner must articulate in his letter seeking leave to appeal to the Court of Appeals each claim upon which he seeks appeal. "[A]rguing one claim in his letter

---

[14] The purpose of the exhaustion requirement is to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction." *Jordan v. Lefevre*, 206 F.3d 196, 198-99 (2d Cir. 2000); *see also Ramirez v. Attorney Gen. of N.Y.*, 280 F.3d 87, 97 (2d Cir. 2001) (interpreting *Jordan*). Under *Jordan*, claims are not fairly presented to the Court of Appeals when the letter seeking leave to appeal argues only a single claim at length, and makes merely a passing reference to other claims. "[A]ppending briefs does not fairly apprise the New York Court of Appeals of claims within those briefs if the leave application focuses only on one claim and nothing explicit is said about preserving the other claims." *Parrish v. Lee*, No. 10-CV-8708 (KMK), 2015 WL 7302762, at *9 (S.D.N.Y. Nov. 18, 2015).

Here, although Wynn raised ten arguments on direct appeal, Wynn's letter seeking leave to appeal to the Court of Appeals solely mentioned one of the issues – that a conflict-of-interest arose out of the presence of two brothers on opposing sides at the trial level.[15] (Pet. to Ct. of Appeals, Answer Ex. D.) The letter did not mention any of the other nine arguments made before the Appellate Division. (*Id.*) The only presentation to the Court of Appeals of the other nine issues was in the form of attaching the briefs of direct appeal. (*Id.*) Because the letter only mentioned one claim, only that claim was properly raised to the Court of Appeals, and the other nine claims were abandoned. *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) ("The fair import of petitioner's submission to the Court of Appeals, consisting of his brief to the Appellate Division that raised three claims and a letter to the Court of Appeals arguing only one of them, was that the other two

---

[15] Unlike the application letter in *Jordan*, which at least requested review of "all" claims below and was still rejected as insufficient by the Second Circuit, 206 F.3d at 198-99, Wynn's letter did not even do that here.

had been abandoned."). Thus, the claims other than the claim relating to conflict-free counsel are unexhausted and should be denied.

**2. Nor Should Wynn Be Permitted to Exhaust Those Claims Now, Because Any Efforts To Exhaust Would Be Futile As The Claims Are Procedurally Barred**

It would be futile to dismiss Wynn's aforesaid claims without prejudice to allow him to exhaust these claims because he is barred from doing so under state law, either on direct review or by collateral attack. *See Grey*, 933 F. 2d at 120 ("For exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred. In such a case, a petitioner no longer has remedies available in the courts of the State within the meaning of 28 U.S.C. § 2254(b).") (internal quotation marks and citations omitted)).

Wynn cannot seek leave to appeal to the New York Court of Appeals for a second time because New York law permits only one such application. *See* N.Y. Ct. R. § 500.20(a)(2) (indicating "only one application" for leave to appeal a criminal conviction "is available"). In addition, the timeframe in which Wynn could have sought reargument or reconsideration of the Court of Appeals' denial of his application for leave to appeal has long since passed. *Id.* § 500.20(d) ("Unless otherwise permitted by the assigned Judge, the reargument or reconsideration request shall be served not later than 30 days after the date of the certificate determining the application of which reargument or reconsideration" is sought.).

Separately, Wynn cannot collaterally attack the conviction on the above-stated grounds because they could have been, and were, raised on direct appeal. *See* N.Y. Crim. Proc. Law § 440.20(2) (providing that a motion to set aside a judgment must be denied "when the ground or

issue raised thereupon was previously determined on the merits upon an appeal from the judgment or sentence . . ."); *see also Garrett v. Superintendent of Bedford Hills Corr. Facility*, No. 10-CV-3093 (SLT), 2013 WL 6199971, at *2 (E.D.N.Y. Nov. 27, 2013) ("[A] C.P.L. § 440.10 motion may not be employed as a substitute for direct appeal when defendant was in a position to raise an issue on appeal or could readily have raised it on appeal but failed to do so") (internal quotation marks and punctuation omitted)).

Thus, the claims that were not exhausted are procedurally barred. *Smith v. Maher*, 468 F. Supp. 2d 466, 471 (W.D.N.Y. 2006) ("Because he failed to raise his claim in state court and no longer may do so, his claim—although deemed exhausted—is procedurally defaulted.").[16]

### 3. **In Any Event, The Claims Should Be Denied On The Merits**

Even if Wynn had exhausted the aforesaid claims, he still would not be entitled to relief. The Court considers each of the claims below.

### a. **Wynn's Evidentiary Claims Are Not Cognizable On Habeas Review**

Wynn raised on direct appeal the following seven claims based on evidentiary rulings or other conduct by the trial court: (1) the trial court prevented Wynn from impeaching a detective with the contents of an anonymous Crime Stopper call memorialized in a police form; (2) the trial court limited cross-examination of one of the prosecution's witnesses; (3) the trial court permitted a prosecution witness to testify to hearsay that another individual induced Wynn to kill the victim; (4) the trial court provided an improper response to a jury note during jury

---

[16] Claims that are procedurally barred cannot be raised unless a petitioner can show: (1) cause for his procedural default, and resulting prejudice; or (2) that failure to consider the claims would result in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 321-25 (1995). Wynn has not made either showing, nor has he sought to do so.

deliberations; (5) the trial court admitted details of a statement made by Wynn despite the fact that the details of the statement were not disclosed in a timely fashion; (6) the trial court precluded evidence of a prior inconsistent statement made by one of the prosecution witnesses; and (7) the trial court permitted evidence of a prior consistent statement made by one of the prosecution witnesses. (Pet., at 7-8; Am. Pet., at 1-2.)

A state court's evidentiary rulings generally do not implicate the federal constitution. *See Crane v. Kentucky*, 476 U.S. 683, 689 (1986) (acknowledging a "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts"); *see also DeGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004) (alleged errors of state law "cannot be repackaged as federal errors simply by citing the Due Process Clause") (internal quotations marks omitted); *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) ("not every error of state law can be transmogrified by artful augmentation into a constitutional violation.") (internal quotation marks omitted). To prevail on a claim of a deprivation of due process due to evidentiary error, a petitioner must establish "the error was so pervasive as to have denied him a fundamentally fair trial." *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985).

The first four claims were denied as unpreserved as a matter of law by the Appellate Division on direct appeal; the Appellate Division therefore declined to review the claims. (*See* Order, Answer Ex. C ("By failing to object, or by failing to request a further remedy following corrective action, defendant failed to preserve any of his remaining challenges to the court's conduct of the trial, and we decline to review them in the interest of justice. As an alternative holding, we also reject them on the merits.").) Federal courts will "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that

33

is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). New York's contemporaneous objection rule, CPL § 470.05(2), presents a sufficient "independent and adequate" ground to preclude federal review. *Clark v. Perez*, 510 F.3d 382, 390-91 (2d Cir. 2008). Since those four claims were denied on independent state law grounds, the Court may not now review them.

The Court next considers the claims that were not barred by the Appellate Division as unpreserved. The Court finds that Wynn cannot meet the standard of showing that he was deprived of a fundamentally fair trial.

Regarding the fifth evidentiary claim—that the trial court improperly admitted details of a statement Wynn made and subsequently denied defense counsel adequate access to the record in their efforts to support their complaint about the admission of those details—because the complained-of details were elicited at a prior suppression hearing where the defense raised no objection based on lack of notice (and litigated the statement's admissibility as a whole), and counsel had full, unimpeded access to the record, it cannot be said that the trial court denied Wynn of a fair trial based upon this claim. Nor does this Court find that the Appellate Division's evaluation of this claim created a constitutional violation. The Appellate Division correctly found that "[t]he court properly received portions of defendant's statement to a detective for which the People had not provided timely notice, because the detective testified about the complete statement at the suppression hearing and defendant had a full opportunity to litigate the issue, rendering irrelevant any deficiency in the notice." (Order, Answer Ex. C.)

Similarly, the Court does not find that the Appellate Division's evaluation of the sixth evidentiary claim—that the trial court declined to admit a report by Detective Perez as evidence

34

of a prior inconsistent statement made by another witness, Mills, and denying the jury's request to view the report during deliberations—resulted in any constitutional violation. Mills did not prepare the document, so it could not be admitted into evidence to impeach Mills; nor could the report be used to impeach Perez, since he testified consistently with the contents of the report. Further, since the report never was admitted into evidence, the trial court properly denied the jury's request to view it during deliberations.

Lastly, the Court finds that, regarding the seventh evidentiary claim—that the trial court improperly permitted the prosecution to elicit statements from witness Reynolds on redirect as a prior consistent statement—the Appellate Division's conclusion that the testimony offered on redirect merely clarified statements that had been made on cross-examination was not a constitutional violation. (*Id.*) Thus, Wynn was not deprived of a fair trial on the basis of any of these claims.

### b. Petitioner's Claim Based On A Justification Defense Does Not Have Merit

Wynn also contends that the trial court erred in refusing to provide a charge of justification to the jury. As previously discussed, this claim is procedurally barred. As with the evidentiary claims, a state trial court's jury instructions are ordinarily a matter of state law and do not raise a federal constitutional question. *Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (discussing deference to trial court jury instructions). Thus, to prevail, Wynn must establish that the instruction was not only "erroneous, or even universally condemned," but that it amounted to a constitutional deprivation. *Id.* (internal quotation marks omitted); *see also Moronta v. Griffen*, 610 F. App'x 78, 79 (2d Cir. 2015) (quoting, *inter alia*, *Cupp*). A denial of a justification charge does not amount to a due process violation even when the charge should be given under

35

the evidence. *See, e.g.*, *Jackson v. Edwards*, 404 F.3d 612, 624-25 (2d Cir. 2005); *Blazic v. Henderson*, 900 F.2d 534 541-42 (2d Cir. 1990) (determining that even though state court erred in not giving a justification charge, petitioner was not entitled to habeas relief because there was no constitutional due process violation). Where a proposed charge is not supported by evidence, due process does not require that it be given. *Blazic*, 900 F.2d at 541.

The Appellate Division determined that "[t]he court properly declined to charge justification, since there was no reasonable view of the evidence, when viewed most favorably to defendant, that defendant believed, or had any reason to believe, that the victim was using or about to use deadly physical force." (Order, Answer Ex. C (citations omitted).) Since neither Wynn nor any other witness testified or provided any supporting evidence – *e.g.*, that Nelson was on the brink of opening fire, of Wynn's state of mind, or that he believed his life was in danger when he (Wynn) fired on Nelson – a justification instruction was unwarranted, and the fact that the trial court did not provide one did not deprive Wynn of a federal constitutional right.

### c.  Petitioner's Sentencing-Based Claims Do Not Have Merit

Lastly, Wynn complains that the sentencing court relied upon certain allegations of misconduct, which he claims are untrue and unreliable. As stated *supra*, this claim is procedurally barred; however, it should also be denied on the merits. In particular, Wynn objects to the fact that, at his sentencing, ADA Thomas Schellhammer informed the sentencing judge of the circumstances underlying a prior conviction in 2004 for second-degree harassment ("2004 conviction") against Wynn's prior estranged girlfriend. ADA Schellhammer explained that Wynn had taken the gun he used to shoot Nelson, held it to his girlfriend's head, and said "I've already killed somebody before and I can do the same to you." (Sentencing Tr., ECF No. 64-13, at 5.) The

prosecutor asked the court to consider this report of Wynn's threats in determining an appropriate sentence for Wynn. (*Id.*)

Judges are afforded "wide discretion" when determining appropriate sentences. *Williams v. New York*, 337 U.S. 241, 246 (1949). Any information or circumstance shedding light on the defendant's background, history and behavior is proper for the sentencing judge to consider when the judge makes his or her determination, *id.* at 249-50,[17] including information about conduct underlying prior convictions. *United States v. Carmona*, 873 F.2d 569, 574 (2d Cir. 1989) ("Any information or circumstance shedding light on the defendant's background, history and behavior may properly be factored into the sentencing determination."). When a sentence is "within the range prescribed by state law," generally, "[n]o federal constitutional issue is presented." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).

Therefore, it was not improper for the sentencing court to consider Wynn's prior bad act. Moreover, defense counsel never disputed the truth of the remarks made by the prosecutor about the facts underlying Wynn's 2004 conviction. As a result, the Court finds that the Appellate Division's evaluation of Wynn's claim – wherein it found that "[t]he record does not establish that defendant's sentence was based on any improper criteria, and we perceive no basis for reducing the sentence or remanding for resentencing" (Order, Answer Ex. C, at 56) – was not a constitutional violation, and there is no basis for federal habeas relief.

---

[17] This is to "ensure[] that the punishment will suit not merely the offense, but the individual defendant." *Pepper v. United States*, 562 U.S. 476, 488 (2011) (internal quotation marks omitted).

**CONCLUSION**

For the foregoing reasons, the Court recommends that the Petition for Writ of Habeas Corpus be DENIED in its entirety. Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Clerk of Court shall mail a copy of this Report and Recommendation to Petitioner at the address provided on the docket.

DATED:        June 29, 2018
              New York, New York

_____
**STEWART D. AARON**
**United States Magistrate Judge**

        *            *            *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Broderick.

38

**THE FAILURE TO FILE THESE TIMELY OBJECTIONS WILL RESULT IN A WAIVER OF THOSE OBJECTIONS FOR PURPOSES OF APPEAL.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).