UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                      :

VONE WYNN,                                         :
                                                      :
                       Petitioner,   :
                                                      :
             -v-                            :
                                                      :
WILLIAM LEE,                                    :
                                                      :
                      Respondent.  :
                                                      :
--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __5/13/2020__

11-CV-3650 (VSB) (SDA)

**OPINION & ORDER**

Appearances:

Vone Wynn
Stormville, NY
*Pro se Plaintiff*

Jessica M. Olive
Lee Matthew Pollack
Ross David Mazer
Dana Renee Poole
*Counsel for Respondent*

    VERNON S. BRODERICK, United States District Judge:

    Pro se Petitioner Vone Wynn filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 on May 13, 2011, ("Petition" or "Pet."), and an amended petition on June 2, 2016

("Amended Petition" or "Am. Pet."). Before me is Magistrate Judge Stewart D. Aaron's June

29, 2018 Report and Recommendation ("Report" or "R&R") recommending that the Petition be

denied in full. (Doc. 92.) Petitioner filed written objections to the Report, (Docs. 115), as did

Respondent, (Doc. 104). Also before me is Petitioner's motion for leave to take discovery

pursuant to Rule 6 of the Federal Rules Governing Section 2554 Proceedings. (Doc. 117.) I

have reviewed the Report and find it to be thorough and accurate in all respects. For the reasons

stated herein, I ADOPT the Report in its entirety, and the Petition is DENIED.  Because I find

that Petitioner's request for discovery lacks good cause, I additionally DENY Petitioner's

discovery request.

The factual and procedural history is thoroughly set out in the Report, familiarity with

which is assumed.  To briefly summarize, on March 24, 2005, Petitioner was convicted of

murder in the second degree following a jury trial in New York Supreme Court, New York

County.  He was sentenced to an indeterminate prison term of twenty-five years to life.  The

conviction and sentence were affirmed on appeal by the First Department, and the New York

Court of Appeals denied further leave to appeal.  *See People v. Wynn*, 888 N.Y.S.2d 38 (App.

Div. 1st Dept. 2009); *People v. Wynn*, 14 N.Y.3d 807, 925 N.E.2d 946, *on reconsideration*, 15

N.Y.3d 811, 934 N.E.2d 905 (2010).

## I.    Legal Standards of Review

### A.    *Review of Magistrate Judge's Report*

Reviewing a magistrate judge's report and recommendation, I "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28

U.S.C. § 636(b)(1)(C).  I review de novo the portions of the Report to which timely and specific

written objections are made.  *Id.*; Fed. R. Civ. P. 72(b)(3).  "The objection must be specific and

clearly aimed at particular findings in the R&R."  *Bussey v. Rock*, No. 12-CV-8267 (NSR)

(JCM), 2016 WL 7189847, at *2 (S.D.N.Y. Dec. 8, 2016) (internal quotation marks omitted).

"Otherwise, the court will review the R&R strictly for clear error when a party makes only

conclusory or general objections, or simply reiterates the original arguments."  *Id.*  Under a clear

error standard of review, "[s]o long as there is a basis in the evidence for a challenged inference,

[the court] do[es] not question whether a different inference was available or more likely."

*United States v. Freeman*, 443 F. App'x 664, 666 (2d Cir. 2011) (quoting *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007)).

"*Pro se* parties are generally accorded leniency when making objections." *Hill v. Miller*, No. 15 Civ. 6256 (KMW)(JCF), 2016 WL 7410715, at *1 (S.D.N.Y. Dec. 21, 2016) (quoting *Pinkney v. Progressive Home Health Servs.*, No. 06 Civ. 5023(LTS)(JCF), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008)). "Nonetheless, even a *pro se* party's objections to a[n] [R & R] must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a 'second bite at the apple' by simply relitigating a prior argument." *Id.*

**B.**   *Habeas Relief*

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas petitions under 28 U.S.C. § 2254 may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). Under the first such test, "a writ of habeas corpus will issue only if 'a state court's application of federal law . . . is so erroneous that there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Duhs v. Capra*, 639 F. App'x 691, 694 (2d Cir. 2016) (quoting *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (per curiam). "Thus, even a showing of 'clear error' will not suffice." *Id.* (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). A state court's factual findings are presumed correct unless the Petitioner comes forward with clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

### C.   *Rule 6 of the Federal Rules Governing Section 2254*

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Rather, Rule 6(a) of the Rules Governing Section 2254 Proceedings states that a "judge may, for good cause, authorize a party to conduct discovery . . . ."  28 U.S.C. § 2254, Rule 6(a).  "Good cause requires more than '[g]eneralized statements regarding the possible existence of discoverable material.'"  *Proctor v. McCarthy*, No. 19-CV-2988 (GBD) (JLC), 2020 WL 1149660, at *8 (S.D.N.Y. Mar. 10, 2020) (quoting *Pizzuti v. United States*, 809 F. Supp. 2d 164, 176 (S.D.N.Y. 2011); *see also Gonzalez v. United States*, Nos. 12 Civ. 5226(JSR)(JLC), 94 Cr. 134(JSR), 2013 WL 2350434, at *3 (S.D.N.Y. May 23, 2013), *reconsideration denied in part*, 2013 WL 4453361 (S.D.N.Y. July 9, 2013).  "A petitioner can meet his burden of showing good cause for discovery only when 'specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'"  *Id.* (quoting *Gonzalez*, 2013 WL 2350434, at *3).  However, Rule 6 does not authorize "fishing expedition[s] . . . merely to determine whether the requested items contain any grounds that might support [a] petition."  *Pizzuti*, 809 F. Supp. 2d at 176 (internal quotation marks omitted).

## II.   <u>Discussion</u>

Petitioner's Petition and Amended Petition seek to challenge his conviction on the following grounds:  (1) that he was denied the right to assistance of conflict-free counsel; (2) that his counsel was ineffective; (3) that the trial court made a number of impermissible evidentiary rulings;[1] (4) that the trial court improperly declined to provide a jury instruction based on a

---

[1] These include that the trial court improperly:  (1) admitted evidence that was not included in the prosecution's voluntary disclosure form; (2) limited Petitioner's impeachment of a police detective; (3) precluded evidence of a prior inconsistent statement made by one of the prosecution's witnesses; (4) limited cross-examination of one of the prosecution's witnesses; (5) admitted a prior consistent statement by one of the prosecution's witnesses; (6) admitted

justification defense; and (5) that the sentencing court impermissibly considered certain factors during his sentencing.[2]

### A.   *Conflict of Interest Claim*

Petitioner objects to the Report's conclusions that (i) he waived any potential conflict of interest claim regarding his defense counsel's potential conflict of interest; and (ii) Petitioner failed to demonstrate an actual conflict of interest.  As an initial matter, I have reviewed de novo the transcripts of Petitioner's pre-*Gomberg* hearings on April 8 and April 29, 2004, and May 13, 21, and 27, 2004, as well as Petitioner's *Gomberg* hearing on June 10, 2004.  (*See* Doc. 64-4, at 2–52.)  Based on my independent de novo review, I agree with the Report's characterization of these transcripts and adopt the Report's factual summaries of these proceedings.  (R&R at 5–8.)

"The right to the effective assistance of counsel [] includes the right to be represented by an attorney who is free from conflicts of interest."  *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003).  "This right may be violated if the attorney has '(1) a potential conflict of interest that result[s] in prejudice to the defendant, or (2) an actual conflict of interest that adversely affect[s] the attorney's performance.'"  *Id.* (quoting *United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994)).  "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action."  *Id.* (quoting *United States v. Schwarz*, 283 F.3d 76 (2d Cir. 2002)).  "An attorney has a potential conflict of interest if 'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'"  *Id.*

---

hearsay evidence from a prosecution witness.

[2] Petitioner also makes multiple objections to the Report's summary of the factual background and procedural history in this case.  (Doc. 115, at 3–12.)  To the extent these objections are relevant to my review of Petitioner's individual claims for habeas relief, I review these factual objections as part of my review of Petitioner's individual claims.  Otherwise, to the extent these factual objections attempt to question the sufficiency of the evidence underlying Petitioner's conviction, such a claim is not properly before the court.

(quoting *United States v. Kliti*, 156 F.3d 150, 153 n. 3 (2d Cir. 1998)).  If the court determines

that counsel suffers from "an actual conflict that is so severe as to indicate *per se* that the

rendering of effective assistance will be impeded, or is analogous to such a conflict . . . the court

must . . . disqualify counsel." *Id*.  However, if an "attorney suffers from a lesser actual or only a

potential conflict, then [the court] may accept a defendant's knowing and intelligent waiver of

his right to conflict-free counsel and permit the defendant to be represented by the attorney of his

choice." *Id.* (internal quotations marks and citation omitted).  As the Second Circuit has stated,

"[a]lthough such a conflict might require a defendant to abandon a particular defense or line of

questioning, he can be advised as to what he must forgo [and] can then seek the legal advice of

independent counsel and make an informed judgment that balances the alteration in the trial

strategy against the perceived effect of having to get a new and perhaps less effective defense

counsel." *Id.* at 127.[3]

Petitioner does not present adequate grounds to establish that his counsel suffered from a

per se conflict that was unwaivable under clearly established law.  Neither the Supreme Court

nor the Second Circuit have ever held that a fraternal relationship between defense counsel and a

prosecutor or adverse prosecution witness is an unwaivable conflict.  Indeed, analogous caselaw

indicates that such a conflict is waivable if made knowingly and voluntarily.  *See United States v.*

---

[3] Respondent objected to the Report's application of *Cuyler v. Sullivan*, 446 U.S. 335 (1980), as the appropriate
standard for assessing conflict of interest claims, relying on *Mickens v. Taylor*, 535 U.S. 162 (2002).  (Doc. 104, at
1–2.)  The issue Respondent raises, which is more appropriately characterized as *Sullivan*'s presumption of
prejudice in conflict of interest cases, appears to be an unsettled question in the Second Circuit.  *See Hyman v.
Brown*, 927 F.3d 639, 670 n.30 (2d Cir. 2019) ("In *Tueros v. Greiner*, 343 F.3d 587 (2d Cir. 2003), this court stated
that 'we must look to *Sullivan*, not . . . *Mickens*" for 'clearly established Federal law,' *id*. at 593.  Nevertheless, we
have since expressly relied on *Mickens* in refusing to extend *Sullivan* . . . .  *See Torres v. Donnelly*, 554 F.3d 322,
326 (2d Cir. 2009).").  Contrary to Respondent's view, however, *Hyman* indicates that application of the *Strickland
v. Washington*, 466 U.S. 668 (1984), prejudice requirement in conflict of interest cases only requires a showing that
a conflict  "adversely affected the lawyer's performance," *id.* at 692 (citing *Sullivan*, 446 U.S. at 350).  *See Hyman*,
927 F.3d at 670 n.30.  This is the same legal standard outlined in the Report, (R&R at 17), and the standard applied
in the Second Circuit.  In any case, I do not reach the issue of prejudice in the instant Opinion & Order given my
agreement with the Report's conclusion that Petitioner waived any potential conflict of interest in this case.

*Murdock*, No. 2:11-cr-105, 2014 WL 12572864, at *4 (D. Vt. Jan. 28, 2014), *report and*

*recommendation adopted*, No. 2:11 CR 105-1, 2014 WL 12572865 (D. Vt. Mar. 3, 2014)

(concluding under Rule 1.7(a) of Vermont Rules of Professional Conduct that a spousal

relationship between a defense lawyer and prosecutor would be waivable); *United States v.*

*Pizzonia*, 415 F. Supp. 2d 168, 184 (E.D.N.Y. 2006) ("An attorney's loyalties to third parties,

including his natural family members, may create a potential conflict of interest if the interests of

those other individuals are adverse to those of his client.  Such a conflict is waivable."); *cf.*

*United States v. Yannotti*, 358 F. Supp. 2d 289, 292 (S.D.N.Y. 2004) (stating that a defense

lawyer's familial relationship with targets of an investigation involving his client presents a

conflict that "may not warrant disqualification without the opportunity of waiver"); *Perez*, 325

F.3d at 127 (stating that an "attorney's . . . prior representation of a trial witness, [is] generally

waivable."); *but see Ventry v. United States*, 539 F.3d 102, 112 & n.11 (2d Cir. 2008) ("An

attorney may continue to represent his client even though he, or his partner, may be called to

testify on the client's behalf," although it would be "problematic" for a lawyer's partner to testify

adversely to a client).

In reviewing Petitioner's waiver argument on direct appeal, the First Department stated

the following:

> Defendant made a valid waiver of any potential conflict arising from this situation
> when, at several court appearances and during a thorough inquiry pursuant
> to *People v. Gomberg,* 38 N.Y.2d 307, 379 N.Y.S.2d 769, 342 N.E.2d 550 [1975],
> the court warned him of the possible disadvantages of this arrangement.  Moreover,
> defendant also consulted with a second, conflict-free attorney regarding the
> decision to remain with the potentially conflicted attorney, and it was the second
> attorney who cross-examined the lead attorney's brother at both the suppression
> hearing and trial.  There is no merit to defendant's suggestion on appeal that, despite
> all these precautions, there was an unwaivable conflict (*see United States v.*
> *Perez*, 325 F.3d 115, 125–129 [2d Cir. 2003]).

*Wynn*, 888 N.Y.S.2d at 39.  The Report similarly concludes that the issues stemming from the

potential conflict in Petitioner's case was adequately raised by the trial court through multiple discussions at pre-*Gomberg* and *Gomberg* hearings, which apprised Petitioner of the potential conflict and its possible consequences.  (R&R 20–21.)  Having reviewed the record de novo and having adopted the Report's factual findings on this issue, I also find that Petitioner was adequately informed of the nature of the potential conflict—indeed he twice stated that he was aware of the potential conflict—and waived such conflict knowingly and voluntarily. Accordingly, Petitioner's ineffective assistance claim based on his counsel's potential conflict of interest is denied.[4]

**B.**     ***Untimely Failure to Investigate Claim***

Petitioner objects to the Report's conclusion that his ineffective assistance claim regarding his counsel's failure to investigate the existence of Detective Mike Paul was untimely raised and does not relate back to the Petition under Federal Rule of Civil Procedure 15.  As the Report notes, Petitioner's initial request to stay these proceedings pending further investigation of his claims, and to accordingly amend the Petition, did not mention Petitioner's potential ineffective assistance claim regarding a lack of investigation into Detective Mike Paul.  Instead, Magistrate Judge Ronald Ellis's September 7, 2011 Report and Recommendation recommended granting Petitioner's leave for a stay and to amend the petition only on the basis of his potential false testimony claim.  (Doc. 10, at 2 ("The claim that Wynn now seeks to exhaust was not included in his Petition.  He claims that he has since discovered, through the efforts of a private investigator, that one of the prosecution's witnesses was induced to give false testimony by Wynn's own attorney, Patrick Brackl[e]y, who was acting for the benefit of his brother, Ryan

---

[4] For the reasons stated in Section II(D), *infra*, I find that Petitioner's additional evidence of a conflict—an affidavit from prosecution witness Robyn Hayslett stating that Petitioner's counsel coerced her into testifying against him—is unreliable and does not present sufficient evidence of an actual conflict that would render the conflict in this case unwaivable.

Brackl[e]y, who was prosecuting Wynn's case.").)  Thus, I agree with the Report's finding that Petitioner's failure to investigate claim should only be considered timely if it relates back to the Petition under Federal Rule of Civil Procedure 15.

An amendment relates back when it "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]"  Fed R. Civ. P. 15(c)(1)(B); *Ching v. United States*, 298 F.3d 174, 181 (2d Cir. 2002).  An amendment does not relate back merely because the proposed claim concerns the "same trial, conviction, or sentence," *Mayle v. Felix*, 545 U.S. 644, 664 (2005).  Rather, relation back is in order only for "claims that are tied to a common core of operative facts."  *Id.*

Petitioner argues that his failure to investigate claim relates back to his conflicted counsel claim, because both claims are "in essence a claim of ineffective assistance of counsel."  (Obj. at 25.)[5]  However, "courts have routinely held that ineffective assistance of counsel claims do not relate back when alleging a different ground for ineffective assistance of counsel."  *Garavito-Garcia v. United States*, No. 17 Civ. 5798 (JSR) (SLC), 2019 WL 6884858, at *7 (S.D.N.Y. Nov. 13, 2019), *report and recommendation adopted*, No. 12-cr-839-1 (JSR), 2019 WL 6878346 (S.D.N.Y. Dec. 17, 2019) (quoting *Ross v. Miller*, No. 14-CV-3098 (RA)(JLC), 2016 WL 1376611, at *20 (S.D.N.Y. Apr. 7, 2016)); *Gonzalez v. United States*, No. 15-CV-8831 (VSB), No. 08-CR-684 (VSB), 2018 WL 5023941, at *6 (S.D.N.Y. Oct. 17, 2018) ("While all three arguments raise the issue of [Plaintiff[']s trial counsel being ineffective, 'it is not sufficient for an untimely amendment merely to assert the same general type of legal claim as in the original § 2255 motion.'"); *Hiers v. Bradt*, No. 11–CV–0270 (ERK), 2014 WL 6804252, at *6 (E.D.N.Y. Dec. 3, 2014) ("The seventh ground for relief asserted in [petitioner's] amended petition is based

---

[5] "Obj." refers to Petitioner's objections to the Report and Recommendation, filed January 11, 2019.  (Doc. 115.)

on trial counsel's failure to 'investigate and prepare' for the suppression of [petitioner's] 'voluntary statements.' . . . This ground for relief is dissimilar to those ineffective assistance claims that [petitioner] asserted in his original petition . . . [and] therefore does not relate back."); *Soler v. United States*, Nos. 10 Civ. 04342(RJH)(MHD), 05 Cr. 00165(RJH), 2010 WL 5173858, at *4 (S.D.N.Y. Dec. 20, 2010) ("Indeed even an ineffective assistance of counsel claim, when alleging a different ground for ineffective assistance, does not relate back to an earlier ineffective assistance claim."). As the Report concludes, Petitioner's untimely failure to investigate claim "is based on facts that are entirely different from the facts underlying" Petitioner's conflict of interest claim. (R&R at 26.) Whether or not a lawyer on Petitioner's defense team suffered from an actual or potential conflict amounting to ineffective assistance does not arise out of the same "common core" of facts related to defense counsel's potential failure to pursue an investigation into whether a detective potentially involved in a defendant's case actually existed.

Given my agreement with the Report on this issue, Petitioner's failure to investigate claim is untimely, and is denied. I therefore need not and do not consider Petitioner's objections to the Report's discussion of the merits of his failure to investigate claim.

## C.   *Petitioner Failed to Exhaust His Remaining Claims*

The Report considered and rejected Petitioner's nine remaining claims, first because these claims were not properly exhausted in front of the state courts, and in the alternative, because the claims lack merit.[6] Petitioner's objection to the Report's exhaustion analysis is not

---

[6] These claims include that the trial court improperly: (1) admitted evidence that was not included in the prosecution's voluntary disclosure form; (2) limited Petitioner's impeachment of a police detective; (3) precluded evidence of a prior inconsistent statement made by one of the prosecution's witnesses; (4) limited cross-examination of one of the prosecution's witnesses; (5) admitted a prior consistent statement by one of the prosecution's witnesses; (6) admitted hearsay evidence from a prosecution witness; (7) responded to a jury request during deliberation; (8) declined to provide a jury instruction based on a justification defense; and (9) considered certain factors during his sentencing. (R&R at 29, 32–33.)

specific, but conclusory and general, warranting only clear error review.  In fact, Petitioner

appears to admit that "the argument on direct appeal . . . revolved around a per se conflict of

interest," and not these nine additional claims Petitioner raises in his Section 2254 petition.  Still,

I will review Petitioner's exhaustion argument de novo for the sake of thoroughness.

 "Under 28 U.S.C. § 2254(b), applicants for habeas relief serving state sentences must

first exhaust all state remedies."  *Ramirez v. Attorney Gen. of the State of New York*, 280 F.3d 87,

94 (2d Cir. 2001).  "State remedies are deemed exhausted when a petitioner has:  (i) presented

the federal constitutional claim asserted in the petition to the highest state court (after preserving

it as required by state law in lower courts) and (ii) informed that court (and lower courts) about

both the factual and legal bases for the federal claim."  *Id.* (citing *Picard v. Connor*, 404 U.S.

270, 276–77 (1971).  "Even if a federal claim has not been presented to the highest state court or

preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result,

then procedurally barred under state law."  *Id.*  However, review of a claim that has not been

presented to the highest state court or preserved will "be subject to the cause and prejudice

standard before reaching the merits."  *Id.*  Because New York's "highest state court exercises

discretionary jurisdiction," the Second Circuit has, on multiple occasions, assessed whether

presentation of a claim to the New York Court of Appeals suffices for purposes of § 2254(b)'s

exhaustion analysis.  *Id.*; *see also Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005); *Galdamez

v. Keane*, 394 F.3d 68, 76 (2d Cir. 2005); *Jordan v. Lefevre*, 206 F.3d 196, 198–99 (2d Cir.

2000); *Grey v. Hoke*, 933 F.2d 117, 120–21 (2d Cir. 1991).

 After Petitioner lost his appeal in the First Department—an appeal for which he had

counsel—on December 28, 2009, Petitioner's counsel requested a certificate granting leave to

appeal to the Court of Appeals.  (Doc. 64-3 Ex. D.)  Petitioner's application stated the following:

The decision of the First Department presents a compelling question of law requiring review and reconciliation. As it stands, there exist per se rules disqualifying judges and jurors by reason of consanguinity. N.Y. Jud. Law. § 14; N.Y. Crim. Proc. Law. § 270.20 (t)(c). Despite the institutional interests at stake in eliminating conflicts based on family ties, there is no concomitant rule disqualifying a defense lawyer who is the blood brother of the prosecutor. When presented with this circumstance in the case at bar, the First Department did not find lead defense counsel disqualified, as a matter of law, by his consanguineous relationship with the prosecutor who conducted the initial investigation, obtained a videotaped statement and then testified at the trial. Significantly, reliance by the First Department on *United States v. Perez*, 325 F.3d 115 (2nd Cir. 2003) supports rather than detracts from Mr. Wynn's position that "the courts do, of course, retain discretion to reject a defendant's knowing and intelligent waiver when an attorney's conflict jeopardizes the integrity of judicial proceedings." *Id*. at 125. A careful review of the opinion affirming Mr. Wynn's conviction reveals the appellate court's focus on the 'precautions' attending the waiver. (*People v. Wynn*, supra, at 2) However, it dismisses as unmeritorious the separate question whether Mr. Wynn's constitutional right to conflict-free counsel was defeated by trial counsel's familial relationship with the prosecutor who investigated the case, gathered critical evidence and then testified at trial. Certification of this question provides an ideal opportunity to establish clear and uniform rules disqualifying institutional participants, including lawyers, whose consanguineous relationship with each other undermines reliability and fairness.

(Doc. 64-3 Ex. D.) In his application, the Petitioner attached copies of the First Department opinion and the parties' briefing, but did not mention any additional rulings in the opinion or arguments made in the briefing. Instead, Petitioner's letter application raised just one "question of law," the conflict of interest issue, (*id.*), and did not adequately present any additional issues thereby abandoning such claims for review. *See Smith*, 411 F.3d at 345 ("Generally 'we assume that the Court of Appeals would construe a petitioner's leave application as abandoning claims that the petitioner had pressed to the Appellate Division below' where those claims were not presented to the New York high court for review." (quoting *Galdamez*, 394 F.3d at 74)); *Grey*, 933 F.2d at 121 (holding that claims were not adequately presented where a petitioner requested review by the New York Court of Appeals of only one of three issues presented to the Appellate Division). The letter application's reference to Petitioner's Appellate Division briefs was

likewise insufficient to present his remaining claims to the New York Court of Appeals, because "[w]here a letter application for leave to appeal to the New York Court of Appeals is silent as to a particular claim, but refers to defendant's Appellate Division brief, the '[r]eferences to attached briefs without more will preserve issues only if the Court of Appeals is clearly informed that the reference is asserting issues in those briefs as bases for granting leave to appeal.'" *Acevedo v. Lempke*, No. 10 Civ. 5285(PAE)(HBP), 2013 WL 6988602, at *5 (S.D.N.Y. Oct. 24, 2013), *report and recommendation adopted*, No. 10 Civ. 5285(PAE)(HBP), 2014 WL 148601 (S.D.N.Y. Jan. 14, 2014) (quoting *Ramirez*, 280 F.3d at 97); *see also Jordan*, 206 F.3d at 198–99 ("Arguing a single claim at length and making only passing reference to possible other claims to be found in the attached briefs does not fairly apprise the state court of those remaining claims."). Here, Petitioner's letter application did not clearly inform the New York Court of Appeals that Petitioner wished to press all of the remaining claims included in his briefs, and only referenced the conflict of interest issue.

Because Petitioner failed to raise the nine remaining claims to the New York Court of Appeals, I agree with the Report's conclusion that these issues are procedurally defaulted. *See Smith*, 411 F.3d at 345 ("Because Smith's letters to the New York Court of Appeals nowhere raised the issue of the exclusion of his aunt's testimony, we agree with the district court that this issue is procedurally defaulted."); (R&R at 93 n.16). And because "Petitioner makes no showing of cause or of prejudice"—as his claims were merely abandoned in his application to the New York Court of Appeals—the remaining claims "must therefore be dismissed without reaching the merits." *Grey*, 933 F.2d at 121.

### D.  *Petitioner's Discovery Request*

Petitioner seeks a discovery order pursuant to Rule 6 of the Federal Rules Governing

Section 2254 Proceedings, granting him discovery over broad categories of documents and recordings related to his defense counsel's investigation of his case and certain witnesses who testified in his case.  (Doc. 117, at 2.)  Petitioner represents that he "has documentary evidence which proves that the requested Discovery material does exist," and that he "presents specific allegations which will give this court reason to believe that Petitioner has good cause" for making these requests.  (*Id.* at 1.)  To the extent Petitioner is in possession of evidence that would support "good cause" for the discovery he seeks, it was his obligation to present them to me.

In any event, certain pieces of evidence Petitioner seeks are not related to his habeas claims.  Specifically, Petitioner seeks a handwritten witness statement that he alleges would have aided him in a potential "third party culpability defense," and interview notes from an individual who could allegedly state that an eyewitness to Petitioner's crime was not actually present at the scene.  (*Id.* at 5.)  These categories of documents do not relate to any of the claims included in Petitioner's habeas petition, and therefore would not corroborate Petitioner's arguments even if fruitful.  I therefore find these requests to be mere fishing expeditions.  *Cf. Hirschfeld v. Comm'r of the Div. of Parole*, 215 F.R.D. 464, 465 (S.D.N.Y. 2003) (stating that Petitioner failed to demonstrate good cause when "it is unclear what information could be revealed that would bear any relation to the claims in [the] petition").  Furthermore, Petitioner's generalized statements that these categories of documents would demonstrate that he is entitled to relief are contradicted by the very materials Petitioner has submitted in connection with his application, thus defeating Petitioner's good cause argument.  (*See* Doc. 117, at 14-15 (indicating that Petitioner was provided with the handwritten witness statement he now seeks); 25 (indicating that the witness Petitioner claims was not present during the homicide testified that he was indeed present).)

Petitioner also seeks witness Robyn Hayslett's Rikers Island attorney visitor log to potentially corroborate his theory that his defense lawyer, Patrick Brackley, met with Hayslett at Rikers and coerced her to testify against him, which he asserts would bolster his conflict of interest claim. Petitioner's primary basis for seeking this evidence is the affidavit he submitted in connection with his renewed 440 motion and Amended Petition. This affidavit was signed by Hayslett and states that she testified falsely against Petitioner because Brackley met with her at Rikers Island in late 2004 or early 2005 requesting that she testify against his client in exchange for leniency from Brackley's brother, Assistant District Attorney Ryan Brackley ("ADA Brackley"). (*See* Doc 62, at 31.) However, as both the First Department and the Report have already concluded, Petitioner's theory that his defense attorney met with Hayslett and convinced her to testify against him is directly contradicted by other facts in the record, rendering statements in the affidavit "demonstrably false." (R&R at 22–23.) For example, Hayslett testified at trial that, although she was interviewed by Petitioner's defense counsel at Rikers, Hayslett was already cooperating with the District Attorney's office at that time. (Doc. 64-8, at 71–72.) When she met with Brackley, Hayslett did not mention her cooperation with the District Attorney's office because Brackley represented the defendant. (Doc. 64-8, at 71–72.) Second, the evidence submitted by Petitioner states that the affidavit in question was prepared by Petitioner himself, read to Hayslett by private investigators, and then signed by her. (Am. Pet. at 35 ("We advised Robin that we had an affidavit, which was previously prepared by you and we read it to her.").) Hayslett did not prepare the affidavit herself, calling into question its reliability, especially since Hayslett testified at trial that toward "the end of December of 2004 and in to January," the period when Petitioner alleges she was coerced to testify, she "got scared and thought [Petitioner] was coming to get her." (Doc. 64-8, at 73–74.) Third, as Respondent

argued to the First Department, by February 2004, Hayslett had already signed a cooperation agreement with the District Attorney's office and testified against Petitioner in the grand jury, (Doc. 64-8, at 111–12), and ADA Brackley was scheduled to leave the District Attorney's office in or around June of 2004, (Doc. 64-4, at 14–15), thereby undermining the contention in the affidavit that Brackley convinced Hayslett to testify against Petitioner in late 2004 or early 2005. These facts undermine the reliability of the affidavit supplied by Petitioner, and that affidavit does not provide a sufficient basis for granting discovery.  I therefore find no good cause to grant Petitioner's discovery request, and Petitioner's request for leave to take discovery is denied.

**III.**     **Conclusion**

For the reasons stated above, I ADOPT Judge Aaron's Report and Recommendation, (Doc. 92), in its entirety.  The petition for a writ of habeas corpus is DENIED.  Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c).  The Clerk is directed to close the case. The Clerk of Court is directed to mail a copy of this order to the pro se Petitioner.

SO ORDERED.

Dated: May 13, 2020
       New York, New York

Vernon S. Broderick
United States District Judge